The next case this morning is 522-0192 Swannigan et al. versus Cade et al. Arguing for the appellants, Rebecca Swannigan et al. is Robert Lathram. Arguing for the appellees, Gregory Cade et al. is Clyde Keane, Albert Bronski, and Brian Sanchez. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. The appellees have agreed to split their time. Mr. Keane will take the first 10 minutes, followed by Albert Bronski and Brian Sanchez for the remaining five. Please note only the clerk is permitted to record these proceedings. Good morning, Council. I will do my best. I don't know how Mr. Sanchez and Mr. Bronski wish to all try to keep an eye on the time and make sure we move forward. Mr. Lathram, are you ready to proceed? Yes, Your Honor. Then go right ahead. Thank you. Council, Your Honor, and may it please this court, my name is Robert Gregory Lathram, and I represent plaintiff appellees in this case, the four, as well as at least 300 other putative class members. Plaintiffs believe that although the fourth amendment complaint that was dismissed by the St. Clair Circuit Court, it was lengthy that there are four, or rather, sorry, three paragraphs that outline the parameters of their construction, their constructive fraud claim against defendant appellees. Plaintiffs believe this claim is an intentional tort based on wrongful conduct, as opposed to the breach of fiduciary duty claim, which was set forth in account two in the complaint, which involves a negligent breach of defendant's duty of care. Plaintiffs believe this difference between wrongful conduct and breach of duty of care is a crucial distinction in this case. The three paragraphs that plaintiffs suggest are indicative of the fraudulent or the constructive fraud claim. First is number 49, which reads, the mediation between defendants and Monsanto attorneys concluded on November 21, 2014, with assigning defendants of a written agreement that settled not only the 2009 cases, but also the claims of the claimants, provided that all of the plaintiffs and claimants. This mediation had dragged on for nearly five years with Cyril Copper refusing to admit liability, whatever. But in, I think, the summer of 2014, Monsanto apparently made a $21 million aggregate settlement offer. Defendants would apparently control disbursement to his clients, the plaintiffs and claimants, but that caveat that substantially all the plaintiffs must participate, plaintiffs believe that this condition that was imposed upon them by Monsanto and accepted by their attorneys is where this wrongful conduct began. The second paragraph is number 128, which reads as follows, defendants intentionally or negligently failed to adequately disclose to the plaintiffs either the total amount of the settlement or the total amount of their attorney's fees until a letter dated on November 7, 2018, which was nearly four years after the settlement agreement was executed, with plaintiffs previously being required more than four years earlier to sign a release in order to receive a $600 quote-unquote participation payment. Defendants repeatedly refused for four years to disclose to plaintiffs the details regarding the settlement. Indeed, in the record, it's clear that not only was a settlement agreement but a trust agreement. All of the documents that were related to this agreement were sealed and were never disclosed to any of the plaintiffs. And that included the total amount of the settlement and how that amount was to be how defendants were and how defendant's share was allocated between their fees and expenses. And for the record here, Monsanto paid $20,708,023.60. And defendants, it seems, arbitrarily set aside $10 million for distribution to plaintiff before the interruption. Monsanto had paid more than $20 million, of which defendants arbitrarily set aside apparently $10,000 for distribution to plaintiffs and claimants, which they allocated as follows. They took $5,334,479.64 for expenses and among themselves allocated the sum of $5,496,604.72 in attorney's fees. All of these disbursements were made without notice or a hearing to any of the plaintiffs in this regard. And as also previously noted, there was no disclosure of these amounts by the plaintiffs until almost four years later in a letter in November of 2018. And the third paragraph is number 130. And this goes again to the heart of the fraudulent or the constructive fraud claim. That paragraph reads as follows. Defendants were so intent on inducing plaintiffs to agree to the settlement and avoid having to go to trial or actually sue Monsanto on behalf of the claimants that on September 16, 2014, they intentionally and or negligently sent plaintiffs a false and threatening letter regarding what they would do to any plaintiff or claimant who refused or failed to timely sign a proposed release to receive that quote unquote $600 participation payment. And the relevant paragraph is, quote, please keep in mind that this resolution process with Monsanto is reviewed as a scheduled payment process versus a lump sum payment typical of some settlements. Furthermore, if you fail or are slow to participate, you could seriously jeopardize this proposed payment schedule and future recovery and you may harm your own case to the degree that it cannot ever be settled. Since this is the case, we will send a letter to anyone who responds too slowly that we will have to dismiss your case and it is doubtful that the court will ever reinstate it. Plaintiffs believe that this paragraph, which is basically tied to that condition in the first paragraph that Monsanto required that the defendants had to obtain substantially the consent of all of their clients through this settlement, is what caused defendants to begin their wrongful conduct to fraudulently induce the defendants or clients to accept the settlement. I have a couple of questions, Mr. Lathram. This case was dismissed at the trial court level based on a motion to dismiss. Was it the Fifth Amendment amended complaint? Uh, no, Your Honor. It was the Fourth Amendment complaint. Okay. And so, uh, the, uh, basis of the motion to dismiss was that, uh, the plaintiffs were required to allege that there had been, uh, damage, uh, in that they would have been harmed, uh, by, uh, settling rather than, uh, being able to prove that their claim was worth more than the amount offered. Would you address that issue? That seems to me to be the basis of the trial court's dismissal. Yes, Your Honor. So, we are, in fact, are now at the heart of this matter. Defendants would have the court believe that this case really is a run-of-the-mill lawyer malpractice case. If defendants did anything untoward, it was merely accidental, and were likely, for example, it was actually, for example, the defendant's fault. Um, there's arguments, um, in the record that, um, defendants, or I'm sorry, plaintiffs, um, were unable to understand the oral statements made to them during the course of representation because of their individual circumstances. Um, this argument, of course, ignores the numerous letters that defendants sent to plaintiffs touting their ongoing success in Monsanto litigation. Indeed, defendants' briefs are filled with citations to cases running through the negligence litany that quite simply goes out of its way to protect Illinois lawyers who breach their duty of care. As I previously noted, however, Your Honor, this is not about a breach of duty of care, although that is set forth in count two. This is about constructive fraud in that the defendant's behavior is wrongful conduct, um, and it's a matter of equity. Um, and so the issue of proximate cause is, is really, is, is the insertion in a negligence cause of action for professional malpractice that the, um, plaintiffs would have to show that they were actually damaged by the breach of duty of care not that they, um, not that it actually was wrongful conduct at all. And in fact, in the brief of, um, do you agree that that was the basis of Judge Gleason's granting of the motion? Yes, absolutely, Your Honor. I do agree with that. Um, our objection, however, is, is, is not that, um, if this was a quote unquote negligence case that it should not have been, um, should not have been dismissed. This is really a constructive fraud case. And in fact, um, in the case of Pro Domus versus Everett Securities, um, the court cites the estate of Miller for the proposition that a transaction in which the agent presents clear and convincing evidence that the transaction was fair and equitable. And in this case, there had, you know, uh, this is again, not about negligence, Your Honor. Count one is really about constructive fraud and plaintiffs believe that it is inappropriate to start with a negligence analysis of count one instead of going with the, um, constructive fraud analysis. And there are two entirely different issues. In any case, um, and this, the whole negligence argument is set forth, I'd say fairly well in the brief of, um, Christopher, uh, defendant Pelley, Christopher Cueto, and the loss of Christopher Cueto. And it states that in legal malpractice, the injury is not the attorney's negligent act, but rather it is the pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. And it cites Northern Illinois Emergency Physicians versus London, Ola, Fana, and Kopka Limited. Um, again, the focus continues to be on negligence and, you know, the breach of a duty of standard of care. And as I previously stated, this is not about negligence, um, unless you believe that what the defendants did was accidental. Um, plaintiffs believe that it was intentional and, um, and plaintiffs would also note that, however, the fourth admitted complaint was specifically drafted and filed to address in part, some of the issues raised by this proximate cause issue about, you know, the case within a case you've got to show, you know, that you would have prevailed with damages, um, you know, in a negligence action. But again, plaintiffs believe that this case is not about negligence or a violation by defendants of their duty of care. Um, plaintiffs believe that defendants acts and omissions were intentional and made for the implied, if not expressed purpose of fraudulently inducing a set forth in the fourth minute complaint that set all their individual cases with Monsanto for essentially what was a $600 quote-unquote participation payment. So that after almost five years of fruitless meditation, defendants could collect nearly 11 million of that almost $21 million of settlement money. Plaintiffs believe these cases about defendants wrongful conduct and the actual remedies for that conduct. Well, under your theory, how would damages be calculated? Well, I think it's set forth. I'm not certain because this is a negligence action that there are quote-unquote damage are not a negligence action that there are necessarily, um, damages at law. There, there is in fact, though, um, Illinois case law, uh, again, referencing the state of Miller that, um, defendants should not be able to profit through attorney's fees, through their expenses from, um, their wrongful conduct. And that's why in the fourth minute complaint with address to set, you know, to request that the attorney's fees and expenses that those funds be, be put into, or be held in a constructive trust, um, pending, you know, order of the trial court. So, um, this court, if I may continue briefly, your honor, this court has the ability to shape a remedy and begin the process of putting, um, a end to this farce that's been going on for 13 years since 2009. In doing so, it may also provide at least 304 individuals and perhaps several thousands more residents of St. Louis with a little justice in their lives. With the court's permission, um, I thank the court. Justice Moore, Justice Bond, do you have any questions before we move on? No questions. No other questions. All right. Uh, obviously counsel, you'll be given your, uh, time for rebuttal. Uh, counsel Keene, are you ready to proceed? Yes, your honor. I am. Go right ahead. Good morning, your honors. Uh, I'm Clyde Keene and I'm here representing Greg, uh, Greg Cade, Kevin McKee, and Gary Anderson, who are all attorneys, uh, partners in the firm of the Environmental Law Group, a firm in Birmingham, Alabama. Um, Mr. Lathram, my esteemed colleague, and I have been debating the real issue in this case. And I'm not talking about getting down in the weeds on all the details of his allegations, which are taken as true at this point. I'm talking about the real issue in this case and why his, uh, complaints repeatedly got dismissed. I think that the great divide between he and I over these years, I think I understand his position and I'm understanding it more with more time. But I think that the great divide is kind of set forth in his reply brief in a quote, uh, certainly from his perspective of the facts in the case. But I'd like to read it to you. He says, defendants argue that wronged clients cannot, and you know, it's difficult for me to think of clients, how they can be wronged if they didn't actually suffer damages. But then again, we've argued about that. We keep arguing about that. Cannot sue their former lawyers for intentional acts of fraud, whether constructive or actual, without proving at trial that they sustained actual damages in the underlying case. Plaintiffs argue that this rule, this is the plaintiff's position, which basically is intended to insulate lawyers from liability for their bad acts, which is not true, is simply and fundamentally unjust, especially in the context of intentional acts involving fraud. Now, Mr. Latham has cited a Minnesota case and a Texas case. And there are cases that allow for disgorgement of fees and Those cases are directly contradicted by repeated opinions, like the Duffy case, the Heimholt case, the DeBrutter case. Our Illinois Supreme Court has repeatedly said an intentional tort, like breach of fiduciary duty against attorneys has to be something that alleges not only causation, but actual damages. That's the law in the state of Illinois. That is the rubric under which the decision has been made here. I would have submit to the court in the context of settlements that this is as it should be. And I say that because if you look at what Mr. Latham is arguing the law in Illinois should be, is that plaintiffs should be entitled to agree with the recommendation of their lawyers to accept settlement monies. Those clients can retain those settlement monies, which has happened here. And then they can turn around and allege a number of wrongful acts and misrepresentations and say, we want all the fees and the expenses disgorged, because that you've expended in this, because you misrepresented to us what the settlement would be. And on top of that, that they also would be entitled to maintain a viable action against a viable defendant who is jointly and severally liable for the same damages, which is the case with all of these plaintiffs. They all are still suing zero copper. I think it would open up, you know, I don't get plaintiffs work anymore because I don't advertise on TV, but I think it would open up an avenue for a lot of litigation if that were the law. And I don't think it is. You know, at the trial level on the fourth amended complaint, we did this so many times, and it was so rote. The same arguments that I heard today, I've heard four times over two years. And I remember on the fourth argument, I said to Judge Gleason, I said, this case reminds me of the statement by Strother Martin in Coolhand Luke. What we've got here is a failure to communicate. But upon reflection, I don't think that's the case. I think that Mr. Latham has known exactly what he's doing from the first iteration of this complaint through the fifth iteration of his complaint in the fourth amended complaint. He simply does not want to allege causation to prove the underlying case against Monsanto. And I think he understands. So what I might add with regard to settlements, let's remember that the state of Illinois is special in the sense that it expressly provides in its Contribution Act, the policy, a strong public policy to promote settlements. And a law that we would have the plaintiffs be able to do what they've done in this case won't go about the promotion of settlements. The plaintiffs have repeatedly alleged that by accepting the settlement agreement and receiving settlement funds, they lost the right to proceed to trial against Monsanto. And it's true that they lost the right to proceed against Monsanto, but they also have never quoted the fact that if they had gone to trial against Monsanto, and not surrender it for the settlement, that they would have been successful. They don't want to allege that. And I think that they having deliberately and repeatedly alleged that by accepting the settlement, they lost their right, does not does not get them there. Can you believe would be accurate to say that regardless of what type case it is constructive fraud, breach of fiduciary duty or negligence, they were required to plead proximate cause that is foreseeability and they've not done that. Is that accurate to say? I do think that that's required under Supreme Court case law. Okay, I'm gonna pronounce it with the Turcios case. The Turcios, but that's a really bizarre case involving suicide. The more on point is Martin versus Helmholtz. And the Supreme Court granted the Turcios case, the appellate court did exactly what Mr. Latham wants this court to do. And the Supreme Court granted leave to appeal to set the what we say and we say what we mean. And what we said in Martin versus Helmholtz is you got to prove causation to damage. And actually, Mr. Latham cited the Turcios appellate court opinion in one of the earlier iterations in arguing his complaint, and it had already been overturned by the Supreme Court. I think it's understandable that Mr. Latham, I listened to Mr. Latham and his arguments, and it's understandable to me that he feels that his clients have been taken for a ride. And he feels by virtue of that fact, they essentially have been damaged. He may be right, but then again, he may not be correct. In either case, it has to be alleged and proven under Illinois law that the settlement hurt the plaintiffs. Now, the plaintiffs seem to feel that they can ignore all of the efforts by their lawyers to build this settlement, to build an efficacious case against Monsanto. And they ignore the fact over the course of discovery depositions, mediation, and expert consultations, that as the case progressed, it became increasingly obvious that the case against Monsanto and their emissions of PCBs in the affected area was dubious at best. And that was borne out by the settlement. And I don't think for a moment that Mr. Latham doesn't understand, because I know he's fully versed in the settlement with Monsanto. And it was set forth by this court by Justice Cates in her opinion in Custer. And that settlement matrix was based on testing plaintiffs for concentrations of PCB in their blood. And when that was done, the vast majority of the randomly selected plaintiffs for testing tested with a concentration that was no greater than the public at large. And the few that had elevated blood tests did contribute to the settlement fund. But that is essentially why the settlement fund was so below its expectations because of the way it was based on blood testing. Essentially, the blood test showed that the plaintiffs weren't hurt by Monsanto. And if Mr. Latham would have to go ahead and prove that each one of these plaintiffs would have received more money had they gone to trial against Monsanto, he's got to prove the case against Monsanto and they are not good cases. They're very marginal cases. So I can understand why he wants the law to be that I can just get disgorgement of funds and I don't have to really defendants in this case are entitled to the law and the protection of the law that they have done something to hurt the plaintiffs. And really, when you think about it, the plaintiffs may well have benefited from the settlement even though they've gotten pretty insubstantial allocations of how much money was put into the pot. And that brings me to the last argument that's been made and it stems from paragraph 143. I think you're down to your five minutes anyway. I can get it. I'm going to finish up here. Here it is. This I think makes a point. In paragraph 143, the plaintiffs allege that the plaintiffs in losing their right, they were damaged in losing their right to go to trial against Monsanto. And they say that said right, having a value for an excess of $600 and the additional personal injury payments actually received by the plaintiff and all putative plaintiffs. And then they write, as evidenced by the individual jury verdicts obtained against tortfeasor Ciro in St. Clair County on October 15, 2015, or 2021. Now, 12 plaintiffs who settled with Monsanto and accepted the money from Monsanto and move forward and were bellwether plaintiffs against Ciro went to trial and received a verdict in St. Clair County totaling $72 million. And that's part and parcel of the strategy that was engaged in, in part by the defendants in this case, to move Monsanto out and concentrate on Ciro because Monsanto was looking as a dubious case where Ciro was emitting dioxins into the community. And there was a lot of evidence of open pit burning and burning and a lot better evidence against Ciro as proof is in the putting $72 million verdict. Now, I don't know that those 12 plaintiffs were damaged by settling with Monsanto for meager amounts. I don't think that they feel that they were. But I would just point out it's a different, it's apples and oranges, there's a different thing to sue Ciro and you can't draw the conclusion that they would have gotten a lot more money from Monsanto. They might've gotten nothing from, as a matter of fact, it's not even total speculation that they might not have gotten any verdict against Monsanto because of the blood testing and because of all of the discovery that was done in the case. So I guess the bottom line here is the plaintiffs still have a viable joint tortfeasor who is jointly and severally liable for their damages. And it's still ongoing for them. And I'd be happy to answer any questions. Well, while we hold off on that, Mr. Bronski and Mr. Sanchez have just a little over two minutes to get what additions they want in. Oh my God. Is that all? Thank you, your honors. A.J. Bronski on behalf of Lloyd Guido, Paul Shane, Troy Walton, and their respected law firms. May it please counsel in the court. Just picking up where Mr. Keene left off, your honors, the black letter law in Illinois is that, and it's regardless of whether the breach of fiduciary duty is based on intentional conduct or negligent conduct, the black letter law in Illinois is that the plaintiff must plead and then prove that the defendant's actions approximately caused plaintiff's injury before the plaintiff may recover again, even in instances of intentional tort. That's never, ever, ever been pled in any of the iterations of this lawsuit. And that's why we're here now on the, what would be the fifth attempt for the plaintiffs to state a cause of action and why judge Gleason's ruling should be affirmed because there is no causation to damages pled. Mr. Latham has gone on and on about the millions of dollars in expenses and fees, but our clients had contracts of representation with each of these particular plaintiffs. And there's no allegation that we in any way breached those contracts of representations. The settlement was reached with Monsanto and under the terms of the settlement pursuant to the contracts of representation, fees were deducted, then attorney's fees, and that left the plaintiffs with what essentially is $600, each of the particular plaintiffs. So what we really have here is the plaintiff saying, well, wait a minute, the fees, the $600 is insufficient. We should have gotten more. And in order to do that under the but-for analysis that has been set forth by the Illinois Supreme Court on countless occasions, they have to prove that not only would they have rejected this particular settlement, had they had the information, but they would have tried the case against Monsanto and successfully tried it and received more money than that they've already received and accepted. And they've never pled that, and that's what is fatal to their case. Thank you, your honor. Sorry, Brian. Here's what I'm going to do. For 22 years, I don't want anybody to go out of my courtroom saying they didn't have their day in court. So what I'm going to do is, if I'm remembering correctly, it's been a while since I read the briefs. I think, Mr. Sanchez, your arguments were very similar to Mr. Bronski's, if my recollection is correct. So if you do have anything you would like to add, I'm going to give you just a short time to do that. Thank you. Brian Sanchez on behalf of Christopher Cueto and law office of Christopher Cueto. I agree obviously with what Mr. Keene and Mr. Bronski have already said. It is about proximate cause and damages. And the divide is, it's right in the reply of plaintiff's appellate brief, page four, plaintiff should not be required to prove either causation or specific injury as is currently required in a legal malpractice claim grounded in negligence under Illinois law. There's no Illinois authority for that proposition. And as you've heard from Mr. Keene and Mr. Bronski, there is a lot of contrary case law that says whether it's breach of fiduciary duty, constructive fraud, negligence, you still need proximate cause and damages. Thank you. Thank you, Mr. Sanchez. So before we move on, I just want to make sure Justice Moore or Justice Vaughn, do you have any questions of either of the three attorneys? No other questions. Not either. Thank you. All right. Well, thank you, counsel. Mr. Lathroom, go right ahead with your rebuttal. It'll be very brief, Your Honor. May it please the court. Again, as long as negligence, then the issue of proximate cause and that case within a case issue that is actually existing Illinois law, then my clients will have no recourse in the particular case. This is basically about fraud and whether it's constructive or actual. And what it ends up doing is that it basically says that a non-settling joint tort feature will pay the legal remedy for a lawyer's fraudulent acts. And that's going to be the outcome unless the court recognizes that the complaint is basically founded in constructive fraud. And I would note, as Mr. Keene has already pointed out, that the fourth admitted complaint was filed specifically to add paragraph 143, which involves a showing that going to trial and the right to going to trial would produce, in the plaintiff's belief, a much greater recovery than they received by being fraudulently induced to settle a case that would primarily benefit plaintiffs or defendants in their role as attorneys. And plaintiffs believe that defendants abuse their positions of power and trust. And certainly the sealing of all the documents that were never the trust agreement, the settlement agreement, none of those documents were ever provided to them, nor were they given any kind of informed consent to any of this. And they were simply told what was going to happen. And they were specifically told what bad thing would happen to them if they didn't agree to the settlement. And that concludes my rebuttal, Your Honor. Thank you. Well, thank you, counsel. Again, before we finish today with this case, Justice Moore or Justice Bond, do you have any final questions? No. I'm not sure what you're trying to argue in your second point. It didn't appear that that was briefed argued on appeal, your second point. There's no citations of the record, but I'm not sure what you're trying to claim. Oh, Your Honor, I was referencing the fourth minute complaint that was filed adding paragraph 143. This is all I'm simply saying. Thank you. Well, gentlemen, thank you for your patience today. We will take this matter under advisement and we will issue an order in due course. We do wish you all have a great day.